**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| MARION COLE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-96-3660 |
| HOUSTON INDEPENDENT | § | |
| SCHOOL DISTRICT and | § | |
| WARNER D. ERVIN individually | § | |
| and in his capacity as Principal of | § | |
| Madison Senior High School, | § | |
| | § | |
| Defendants. | § | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
ENTERED

MAR 0 6 1998

Michael N. Milby, Clerk

## MEMORANDUM OPINION AND ORDER

Plaintiff Marion Cole ("Plaintiff") has brought this action against Defendants Houston

Independent School District ("H.I.S.D.") and Warner Ervin, alleging discrimination on the

basis of race and age, retaliation, and violation of her constitutional rights to free speech and

equal protection. Defendants have moved for summary judgment on all of Plaintiff's claims

and have moved to strike all of the evidence that Plaintiff has submitted in opposition to the

summary judgment motion. The Court has considered Defendants' Motion for Summary

Judgment [Doc. # 17], Plaintiff's Response to Defendant's Motion for Summary Judgment

[Doc. # 18], Defendants' Reply [Doc. # 21], Defendants' Objections to Plaintiff's Summary

Judgment Evidence and/or Motion to Strike [Doc. # 20], Plaintiff's Response to Defendants'

Objections [Doc. # 22], all other matters of record in this case, and the relevant authorities.

25

For the following reasons, Defendants' Motion for Summary Judgment [Doc. # 17] is **GRANTED** and Defendant's Motion to Strike [Doc. # 20] is **DENIED AS MOOT.**

## I.    **FACTUAL BACKGROUND**

Plaintiff Marion Cole has been employed under contract as a teacher by Defendant H.I.S.D. since 1985. Plaintiff currently works as a "supernumerary" teacher, which means that she does not have a stationary classroom assignment; instead she reports to classrooms where H.I.S.D. has vacancies.[1]

In this lawsuit, Plaintiff raises a number of complaints against H.I.S.D. and against Defendant Warner Ervin, the principal of Madison High School. From the fall of 1992 until the spring of 1995, Plaintiff served as an art teacher at Madison and had a stationary classroom assignment there. In her Complaint, Plaintiff details a list of allegations of poor treatment she claims to have received from Ervin. *See* Plaintiff's Original Complaint [Doc. # 1], at 3-7. Much of this list consists of what Plaintiff characterizes as unfair reprimands and attempts to dock her pay.[2] Plaintiff claims that Ervin mentioned some of these

---

[1]    Unlike "substitute" teachers, "supernumerary" teachers work under contract. "Substitute" teachers are employed and paid on a day-to-day basis. *See* Defendants' Motion for Summary Judgment, at 2 n.4.

[2]    For instance, Plaintiff claims that Ervin reprimanded her for wearing inappropriate clothing to work even though her clothing did not violate any H.I.S.D. policy; for not standing by her classroom door in the morning before class even though she was assigned at the time to be outside on the school playground; for not reporting to her playground duty even though she was on an excused school errand; for sending students to the office for disciplinary action, which she believed to be in accordance with H.I.S.D. policy; for allowing a student to leave class without a permit even though this incident occurred in the morning before school had begun; for leaving school with a cold one day after Ervin failed to respond to her request to go home; for attending an H.I.S.D. function without permission; for using the rest room
(continued...)

reprimands in his official evaluation of her, and when she attempted to file a grievance protesting the evaluation on the ground that mentioning prior reprimands is against H.I.S.D. policy, she was told that her grievance was premature because the evaluation was not yet final.

Plaintiff also alleges that she made a number of complaints to Ervin about the conditions in her classroom, which she claimed were causing her health problems. Plaintiff contends that Ervin responded to these complaints belatedly, if at all, and did not take appropriate measures to solve the problems that she raised. *See* Complaint, at 10-11.[3]

At the end of the 1994-95 school year, Plaintiff's position at Madison was eliminated. Defendants contend that four positions were eliminated from the school at that time due to decreasing student enrollment. *See* Motion for Summary Judgment, at 3. Plaintiff claims

---

[2]     (...continued)
during class; for not signing out during a teacher preparation day; for arriving late due to heavy traffic; for attempting to take a thirty minute personal leave to meet with an insurance agent even though she had received permission to take the leave; and for taking a personal business day because of a mandatory court date. Plaintiff admits that several of these reprimands and attempts to dock her pay were later voided.

[3]     For instance, Plaintiff contends that in early 1994 she began reporting to Ervin that she was experiencing health problems due to exposure to particles in the air of her classroom. Ervin eventually reassigned her to another classroom, but Plaintiff claims that the new classroom was also inadequate. Later in 1994, Plaintiff claims that she began experiencing health problems again and asked Ervin to install "air ionizers" in her classroom but that he denied her request. In spring of 1995, Plaintiff claims that she notified the Health Department of the conditions in her classroom and the Department inspected and found that the heating and air conditioning ducts were not installed correctly, thus causing particles and mold spores to be blown into the classroom, and that loose tiles on the floor contained asbestos. She claims that one day the ducts began emitting fumes, and Plaintiff evacuated her class; however, Ervin ordered her to return to the classroom. Although she was later assigned again to another classroom, this room was being painted, and Plaintiff had to teach her class in the school library for a week.

that this explanation cannot be correct because enrollment was actually increasing. *See* Complaint, at 7.

Plaintiff claims that after she lost her permanent position as an art teacher, she began receiving poor treatment from H.I.S.D., which shuffled her around among positions for which she was not qualified. *See* Complaint, at 7-10. For instance, right after her position was eliminated, Plaintiff was reassigned as a supernumerary physical education teacher at Madison. Plaintiff claims that she began looking for permanent positions at other schools by sending her resume in response to H.I.S.D. job postings. However, she claims that, although H.I.S.D. has a policy to give first preference in job opening to supernumerary teachers, she did not receive any responses.

In the fall of 1995, Plaintiff alleges that she was reassigned again, this time to teach a remedial writing class. This experience was extremely stressful for her, she claims, because she is not qualified to teach remedial studies. Later, she claims that she was offered a permanent position at Milby Middle School, but only on the "illegal" condition that she waive her seniority rights. She rejected this offer. Soon after, she claims that she was reassigned to Thomas Middle School but that the principal there refused to honor an alleged oral promise, apparently made by someone else, that Plaintiff could teach art at that school. The Thomas principal reassigned her as a supernumerary math teacher. During this period, Plaintiff filed a grievance regarding her situation.

In January 1996, Plaintiff claims she was reassigned to teach a computer class, even though she does not have any experience with computers. While teaching this class, she

4

claims to have tripped on computer cables and injured her back, which forced her to take a sick leave for the remainder of the semester. She alleges that H.I.S.D. refused to look for a permanent position for her while she was on leave, even though the school district's policy is to locate new positions for supernumeraries even while they are on sick leave.

In the fall of 1996, Plaintiff returned to work as a supernumerary art teacher at Bastian Elementary School. Plaintiff apparently still holds this position, although she is dissatisfied with it because she claims not to be qualified to teach at the elementary level.

In October 1996, Plaintiff filed this lawsuit. In her Complaint, she alleges that Defendants Ervin and H.I.S.D. discriminated against her on the basis of her race, African-American, and that she suffered both disparate treatment and disparate impact discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). In support of her disparate treatment claim, she alleges that "[f]or over three years, Defendants have placed several white male and/or female teachers in permanent teaching positions" and "have intentionally ignored H.I.S.D.'s policy which requires that supernumerary teachers receive first preference when openings become available in permanent positions." Complaint, at 11. In support of her disparate impact claim, she again alleges that Defendants have ignored H.I.S.D.'s policy that supernumerary teachers receive first preference for new openings and states that "[a]lthough the hiring and placement policies and procedures of H.I.S.D. appear facially neutral, the application and impact of such policies on black, females, in particular, has had and continues to have an adverse impact." Complaint, at 12.

Plaintiff also alleges that Defendants have retaliated against her, in violation of Title VII, "in an effort to impede Plaintiff's progress both personally and professionally." Complaint, at 11. However, in her Complaint, she does not specify what actions of hers she believes were the cause of Defendants' alleged retaliation.

Plaintiff also raises a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). She alleges that Defendants discriminated against her because she is over forty. At the time she filed the lawsuit in October 1996, Plaintiff was forty-five years old. She states that "[f]or over three years, Defendants have placed several younger, white males and/or females who are not part of the age protected class in permanent teaching positions even though it is H.I.S.D.'s policy to give supernumerary teachers such as Plaintiff first preference when permanent positions become available." Complaint, at 12.

Finally, Plaintiff raises two constitutional claims under 42 U.S.C. § 1983. She alleges that Defendants have deprived her of her free speech and equal protection rights. In support of her free speech claim under the First Amendment, she alleges that Defendants "retaliated" against her because she "attempted to speak out on matters of public concern regarding the arbitrary and capricious manner in which H.I.S.D. implemented its policies and procedures," because she had her union representative accompany her to several grievance proceedings and meetings regarding possible permanent positions, because she has been repeatedly assigned to supernumerary teaching positions for which she is not qualified, and because she has not been able to secure a permanent teaching position. Complaint, at 13. In support of her equal protection claim under the Fourteenth Amendment, she alleges again that

6

"Defendants have placed several white male and/or female teachers in permanent teaching positions even though it is the H.I.S.D. policy to give supernumerary teachers such as Plaintiff first preference when permanent positions become available." Complaint, at 13-14.[4]

## II.    SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Bozé v. Branstetter*, 912 F.2d 801, 804 (5th Cir. 1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *See Bozé*, 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)). However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy--that is, when both parties have submitted evidence of contradictory facts." *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996).

---

[4]     In their Motion for Summary Judgment, Defendants state that Plaintiff also alleged in her deposition that Ervin sexually harassed her. *See* Defendants' Motion for Summary Judgment, at 2 n.1; Deposition of Marion Cole ("Cole Deposition"), Exhibit A to Defendants' Motion for Summary Judgment, at 34. Defendants request that the Court dismiss this claim because Plaintiff did not raise it in her E.E.O.C. Complaint. The Court need not dismiss this claim because Plaintiff has not raised it in this lawsuit. Sexual harassment is not a claim in this case. It appears nowhere in Plaintiff's Complaint, and Plaintiff does not mention it in any way in her Response to the summary judgment motion.

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. If the movant meets this initial burden, the burden shifts to the nonmovant to demonstrate with "significant probative evidence" that there is an issue of material fact so as to warrant a trial. *Texas Manufactured Hous. Ass'n v. Nederland*, 101 F.3d 1095, 1099 (5th Cir. 1996), *cert. denied*, 117 S. Ct. 2497 (1997); *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 161 (5th Cir.), *cert. denied*, 117 S. Ct. 586 (1996)); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *See Douglass v. United Services Auto. Ass'n*, 65 F.3d 452, 459 (5th Cir. 1995), *revised on other grounds*, 79 F.3d 1415 (5th Cir. 1996) (en banc); *Little*, 37 F.3d at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995); *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *See Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 322).

## III.  DISCUSSION

### A.  Race Discrimination

Plaintiff's claim of race discrimination is entirely conclusory and based on nothing more than her own subjective impressions.  Other than the fact that she is African-American and that she claims to have been treated poorly in her job, Plaintiff has made absolutely no specific allegations nor brought forth any evidence whatsoever connecting this treatment of her to her race.  As shown in the following analysis, Plaintiff's claim does not meet the legal standard necessary for a claim of race discrimination under either disparate treatment theory or under disparate impact theory.  Because Plaintiff has failed to raise a genuine issue of material fact on her race discrimination claim, the Court dismisses it.

**Liability of Defendant Ervin.**-- As a preliminary matter, the Court must dismiss Plaintiff's Title VII claim against Defendant Ervin.  Title VII makes it unlawful for an "employer" to discharge or otherwise discriminate against an individual with respect to that person's compensation, terms, conditions, or privileges of employment, or to otherwise adversely affect the person's status as an employee, because of that person's race.  *See* 42 U.S.C. § 2000e-2(a).  Title VII defines "employer" as a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.  *See* 42 U.S.C. § 2000e(b).  "[T]itle VII does not permit the imposition of liability upon individuals unless they meet title VII's definition of 'employer.'"  *Grant v. Lone Star Co.*, 21 F.3d 649, 652-53 (5th Cir. 1994).

9

In the case at bar, Ervin is not an appropriate defendant under Title VII because he does not meet the statutory definition of an "employer." Instead, he was merely a supervisory employee of H.I.S.D. Title VII is not intended to burden small entities such as supervisory employees with civil liability and costs associated with litigating discrimination claims. *See id.*

**Disparate Treatment Claim Against H.I.S.D.**-- In bringing a disparate treatment claim under Title VII, Plaintiff bears the initial burden of establishing a prima facie case of intentional discrimination. Plaintiff may establish her prima facie case either by direct evidence of discrimination or inferentially by showing that: (1) Plaintiff is a member of a protected class; (2) Plaintiff was qualified for the position she held; (3) Plaintiff was discharged or subject to adverse employment action; and (4) those outside the protected class were placed in Plaintiff's position following the discharge or otherwise received more favorable treatment. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995).

In this case, Plaintiff has failed to satisfy her prima facie burden. She has not submitted any direct evidence of discrimination. Nor has Plaintiff established the inferential prima facie elements. Defendant H.I.S.D. does not dispute the first two inferential prima facie elements, that Plaintiff is a member of a protected class and that she was qualified for her position. *See* Defendants' Motion for Summary Judgment, at 6. However, H.I.S.D. claims that she has not met the third and fourth elements, that she was subject to any adverse

employment action and that anyone outside the protected class received more favorable treatment than Plaintiff.

It is not clear to this Court whether Plaintiff's allegations meet the requirement that she was subject to an adverse employment action. Adverse employment actions under Title VII have been held in the Fifth Circuit to include only "ultimate employment decisions" such as hiring, granting leave, discharging, promoting, and compensating, not "every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.), *cert. denied*, 118 S.Ct. 336 (1997); *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1996). Plaintiff's claims that she received undeserved reprimands clearly do not establish that she suffered any actionable adverse employment actions under Fifth Circuit authority. However, her claims that she had her pay docked on several occasions, that she lost her permanent art teacher position, and that she was not hired for another permanent teaching position could conceivably constitute adverse employment actions.[5] However, it is not necessary for the Court to make this determination conclusively because Plaintiff has clearly not established the fourth element of her prima facie case.

---

[5]   H.I.S.D. argues that Plaintiff's failure to obtain a permanent teaching position after the 1994-95 school year is not an adverse employment action because she remained on the H.I.S.D. payroll and continued to receive the same salary that she would have received as a teacher in a stationary classroom. It is not clear to the Court whether the fact that permanent teachers and supernumerary teachers are on the same pay scale precludes the possibility that Plaintiff's failure to obtain a permanent position could qualify as an adverse employment action. Even if the pay is the same for the two positions, it appears evident that a permanent position has higher prestige, more stability, and is thus more desirable than a supernumerary position.

Plaintiff's claim of disparate treatment race discrimination must fail because she has brought forth no evidence in support of her vague assertion that anyone outside her protected class received more favorable treatment than she did.  In order to satisfy this prima facie element, Plaintiff must show that other employees "were treated differently under circumstances 'nearly identical' to [hers]." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (citing *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). Plaintiff alleges vaguely in her Complaint that white teachers received permanent positions during the period in which Plaintiff sought a permanent position and was shuffled around among supernumerary positions. However, in response to Defendants' Motion for Summary Judgment, Plaintiff has submitted no evidence to back up this allegation.  She has not named one person who, nor even described one situation in which a white teacher, received a permanent position to her detriment.[6]  Instead, she relies entirely on one conclusory statement in her affidavit that "[b]ased on my personal knowledge, the district hired people that were younger than forty and/or whites, over me, despite my status."  Affidavit of Marion Cole,

---

[6]      In one of her interrogatory responses, Plaintiff claims that, at the time she interviewed for the position at Milby, five white teachers held art teacher positions there. *See* Plaintiff's Supplemental Responses to Defendant H.I.S.D.'s First Set of Interrogatories, Exhibit C to Defendants' Motion for Summary Judgment, Interrogatory No. 14.  However, Plaintiff does not allege that any of these teachers obtained these positions during the period in which Plaintiff was seeking a position; it appears that all five of them were already employed at the time Plaintiff interviewed at Milby and thus none of them was chosen over Plaintiff.  In addition, Plaintiff admitted in her deposition that the art teacher position at Milby, which she rejected because she did not want to waive her seniority rights, was never filled. *See* Cole Deposition, at 482.  Thus, no one received this position to her detriment.

Exhibit A to Plaintiff's Response to Defendants' Motion for Summary Judgment, at 5.[7] With

respect to her claim that she had her pay unfairly docked on several occasions, Plaintiff has

not even alleged that anyone else in a similar situation to her received different treatment.

In short, Plaintiff's entire race discrimination claim is based upon her own conclusory

statements and subjective impressions. An employee's "self-serving generalized testimony

stating her subjective belief that discrimination occurred . . . is simply insufficient to support

a jury verdict in plaintiff's favor." *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261,

268 (5th Cir. 1994).

Because Plaintiff has failed to establish a prima facie case of race discrimination, the

Court need not engage in the remainder of the disparate treatment race discrimination

analysis. Plaintiff has simply failed to raise a genuine question of material fact with respect

to the issue of whether anyone outside her protected class received more favorable treatment

---

[7]     In her Response to the summary judgment motion, Plaintiff argues that, in discovery, she
sought information that would support her claim that other teachers were treated more
favorably but that H.I.S.D. objected and refused to give Plaintiff the information she
requested. *See* Plaintiff's Response, at 5-6 (citing H.I.S.D.'s Objections and Answers to
Plaintiff's First Set of Interrogatories, Exhibit O to Plaintiff's Response, at 6-7). Plaintiff
requests that H.I.S.D. be estopped from arguing that no other teachers received more
favorable treatment than Plaintiff because H.I.S.D. denied Plaintiff access to such
information. The Court rejects this request. In her interrogatories, Plaintiff did not
specifically ask whether any non-African-American supernumerary teachers received
permanent positions during the period in which Plaintiff sought one. Although Plaintiff
asked H.I.S.D. in her interrogatory requests who else applied for the jobs Plaintiff applied
for and who was hired, Plaintiff did not inform H.I.S.D., in connection with these requests,
which jobs she applied for. The Court therefore finds H.I.S.D.'s objections to these
interrogatories justified. In any event, if Plaintiff was not satisfied with H.I.S.D.'s responses
to her interrogatories, she should have either rephrased her questions or filed a Motion to
Compel H.I.S.D. to respond more fully. Pointing out that she asked tangentially relevant
questions during discovery does not satisfy Plaintiff's burden in opposing H.I.S.D.'s
summary judgment motion.

than she did. The Court therefore dismisses her claim that she suffered disparate treatment

race discrimination.[8]

**Disparate Impact Claim Against H.I.S.D.**-- In addition to her claim that she was

disparately treated on the basis of her race, Plaintiff also alleges that she suffered from

disparate impact discrimination. In support of her disparate impact claim, Plaintiff argues

that Defendants have ignored H.I.S.D.'s policy that supernumerary teachers receive first

preference for new openings and states that "[a]lthough the hiring and placement policies and

procedures of H.I.S.D. appear facially neutral, the application and impact of such policies on

---

[8]    Even if Plaintiff has established her prima facie case, she has still not succeeded in raising any fact questions with respect to the remainder of the Title VII disparate treatment analysis. If a plaintiff establishes a prima facie case, a presumption of discrimination is created, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *See St. Mary's*, 509 U.S. at 506-07; *Meinecke*, 66 F.3d at 83. If the defendant satisfies this burden, the presumption disappears and the plaintiff must prove that the proffered reasons are a pretext for discrimination. *See id.*

In this case, Plaintiff does not deny that Defendants have articulated legitimate, non-discriminatory reasons for their actions. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment, at 6. She claims, however, that one of their reasons for one of their actions is pretextual. Specifically, Plaintiff argues that Defendants' explanation that her permanent position as an art teacher at Madison was eliminated due to decreasing student enrollment is untrue. In support of this argument, she offers an unauthenticated handwritten note, allegedly from H.I.S.D.'s accounting office, listing "unofficial figures" that purportedly indicate that enrollment was actually increasing. *See* Exhibit H to Plaintiff's Response. This proffered evidence, even if admissible, is insufficient to raise a fact question regarding pretext. Also, apparently in support of her claim of pretext, Plaintiff disputes a number of Ervin's allegations regarding her conduct at Madison. *See* Plaintiff's Response, at 6 n.4. It is unclear to the Court how exactly Plaintiff intends for these arguments, regarding the propriety of her conduct, to support her claim of pretext, since Defendants claim that her position was eliminated due to decreasing enrollment, not due to any alleged deficiencies in Plaintiff's conduct. The Court further notes that none of Ervin's complaints about her conduct, nor Plaintiff's responses to his allegations, are connected in any way to Plaintiff's race, or, for that matter, to her age.

black, females, in particular, has had and continues to have an adverse impact." Complaint, at 12.

Courts analyze discrimination claims under a disparate impact model "when employment practices are 'facially neutral in their treatment of different groups but . . . in fact fall more harshly on one group than another and cannot be justified by business necessity.' *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1284 (5th Cir. 1994) (quoting *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). "The disparate impact model applies only when an employer has instituted a specific procedure, usually a selection criterion for employment, that can be shown to have a causal connection to a class based imbalance in the work force." *Pouncy v. Prudential Ins. Co.*, 668 F.2d 795, 800 (5th Cir. 1982). A court should not undertake a disparate impact analysis if the plaintiff cannot identify a specific policy that allegedly impacted the workplace in a discriminatory manner. *See Anderson*, 26 F.3d at 1284.

In this case, Plaintiff has failed to identify what policy of H.I.S.D.'s she believes has a discriminatory effect on African-Americans. Her vague and conclusory statement in her Complaint that H.I.S.D.'s placement policies and procedures have an adverse impact on black females is simply not sufficient to defeat Defendants' Motion for Summary Judgment on this claim. Moreover, her disparate impact claim makes little sense in light of the fact that she argues most strenuously not *against* any H.I.S.D. policy, but instead that H.I.S.D. *ignored* its policy in its treatment of her. Plaintiff clearly does not attack H.I.S.D.'s policy of giving hiring preferences to supernumerary teachers.

15

In any event, Plaintiff has failed to submit evidence in support of her claim that any H.I.S.D. policy had a disparate impact on African-Americans. The Court therefore dismisses Plaintiff's claim that she suffered disparate impact race discrimination.

### B. Retaliation

Plaintiff also makes the vague claim that Defendants have retaliated against her, in violation of Title VII, "in an effort to impede Plaintiff's progress both personally and professionally." Complaint, at 11. However, Plaintiff does not specify in her Complaint which of her actions she believes were the cause of Defendants' alleged retaliation.

In order to succeed on a claim of illegal retaliation, Plaintiff bears the initial burden of establishing a prima facie case that she was terminated in retaliation for engaging in a protected activity, for which the requirements are that: (1) Plaintiff engaged in an activity protected by Title VII; (2) Plaintiff was thereafter subjected to some adverse employment action; and (3) there was a causal connection between Plaintiff's participation in the protected activity and the defendant's decision to take the adverse employment action. *See Mattern*, 104 F.3d at 705; *Dollis*, 77 F.3d at 781; *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992).

Once again, the Court finds that Plaintiff has failed to satisfy her prima facie burden. As described in the previous section on race discrimination, it is uncertain whether Plaintiff was subjected to any adverse employment action. However, even if she was, Plaintiff has not identified what protected activity she claims she engaged in which caused Defendants to take the adverse action.

An employee has engaged in activity protected by Title VII if she has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996). Even a liberal construction of Plaintiff's Complaint fails to reveal that Plaintiff engaged in any behavior that would qualify as a protected activity under Title VII.

Although Plaintiff apparently complained about Ervin's treatment of her, especially what she perceived to be unfair reprimands, complained about H.I.S.D.'s failure to find her a stationary teaching position, filed a grievance regarding her contract situation, and brought a union official with her to several meetings, the Court has no information from Plaintiff that connects any of these activities to Title VII. It appears that Plaintiff complained that Defendants treated her poorly; Plaintiff has not submitted any evidence to the Court that, prior to her alleged adverse employment actions, she complained that Defendants had discriminated against her on the basis of the race. Likewise, Plaintiff has not submitted any evidence to show that she raised issues of race discrimination in her grievance or in her contract negotiations, or that any of the adverse employment actions which she allegedly suffered occurred *after* she filed a complaint of race discrimination.

Because Plaintiff has failed to identify a protected activity in which she engaged, she obviously cannot show that there was any causal connection between her participation in any such activity and any alleged adverse employment actions.

Thus, Plaintiff has failed to meet her prima facie burden on her retaliation claim. Because she has not raised a genuine issue of material fact as to whether Defendants retaliated against her in violation of Title VII, the Court dismisses this claim.[9]

## C.    Age Discrimination

Plaintiff's claim of age discrimination is also conclusory and based on nothing more than her own subjective impressions. Other than the fact that she is more than forty years old and that she claims to have been treated poorly in her job, Plaintiff has made absolutely no specific allegations nor brought forth any evidence whatsoever connecting this treatment of her to her age. As shown in the following analysis, Plaintiff's claim does not meet the legal standard necessary for pursuing a claim of age discrimination under the ADEA. Because Plaintiff has failed to raise a genuine issue of material fact on her age discrimination claim, that claim is dismissed.[10]

---

[9]     Again, because Plaintiff has failed to establish a prima facie case of retaliation, the Court need not engage in the remainder of the retaliation analysis. However, even if Plaintiff has established her prima facie case, for the same reasons described earlier with respect to the race discrimination claim, she has still not succeeded in raising any fact questions with respect to the second and third steps of the Title VII analysis. *See supra* note 8.

[10]    As with Plaintiff's Title VII race discrimination claim, Plaintiff's age discrimination claim against Ervin must be dismissed at the outset. Liability for violations of the ADEA attaches only to a plaintiff's employers. *See* 29 U.S.C. § 623(a). The ADEA requires that an employer have twenty or more employees for the statutory period. *See* 29 U.S.C. § 630(b). The ADEA does not permit the imposition of liability upon supervisory employees unless they meet the statutory definition of "employer." *See Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Since Ervin does not meet the definition of "employer," he is not a proper defendant for Plaintiff's age discrimination claim. The Court therefore dismisses this claim against him.

The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to that person's compensation, terms, conditions, or privileges of employment because of that person's age. *See* 29 U.S.C. § 623. In order to prove that she was illegally discriminated against on the basis of age, Plaintiff bears the initial burden of establishing a prima facie case of intentional discrimination. Plaintiff may establish her prima facie case either by direct evidence of discrimination or inferentially by showing that: (1) Plaintiff is a member of a protected class; (2) Plaintiff was qualified for the position she held; (3) Plaintiff was discharged or subject to adverse employment action; and (4) those outside the protected class were placed in her position following the discharge or otherwise received more favorable treatment. *See St. Mary's*, 509 U.S. at 506; *Meinecke*, 66 F.3d at 83. To establish the fourth element under the ADEA, Plaintiff is not required to show that a person outside the ADEA's protected class received more favorable treatment, but rather that a person who was substantially younger than Plaintiff received more favorable treatment. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996).

Plaintiff's age discrimination claim must fail because she has not submitted any direct evidence of age discrimination, nor has she satisfied her inferential prima facie burden. Once again, Defendants do not dispute that Plaintiff, who is more than forty years old, is a member a protected class, and Defendants do not dispute that Plaintiff was qualified for the position she held. Defendants argue that Plaintiff was not subjected to an adverse employment action. However, the Court need not reach this issue because Plaintiff has utterly failed to create a fact issue on the fourth prima facie element. As with her race discrimination claim, Plaintiff

19

has come forth with no specific evidence whatsoever that anyone younger than Plaintiff received more favorable treatment than she did.[11]

Because Plaintiff has failed to establish a prima facie case of age discrimination, the Court need not engage in the second and third steps of the discrimination analysis. Plaintiff has simply failed to raise a genuine question of material fact with respect to the issue of whether anyone outside her protected class received more favorable treatment than she did. The Court therefore dismisses her claim that she suffered age discrimination.[12]

###    D.    First Amendment Claim

In her Complaint, Plaintiff also claims that Defendants have violated her rights under the First Amendment to the United States Constitution. In support of this claim, she alleges that Defendants "retaliated" against her because she "attempted to speak out on matters of public concern regarding the arbitrary and capricious manner in which H.I.S.D. implemented its policies and procedures," because she had her union representative accompany her to several grievance proceedings and meetings regarding possible permanent positions, because she has been repeatedly assigned to supernumerary teaching positions for which she is not

---

[11]    The closest Plaintiff comes to naming specific individuals is, again, her vague testimony in her deposition that five teachers at Milby were younger than she was. Again, it appears that these teachers obtained their positions at Milby before Plaintiff applied there and therefore did not obtain these positions in lieu of Plaintiff. In any event, in Plaintiff's deposition, in response to a question of whether these teachers "could have been older than" Plaintiff, Plaintiff responded simply: "That's possible. But I don't believe so." Cole Deposition, at 485.

[12]    Even if Plaintiff has established her prima facie case, for the same reasons described earlier with respect to the race discrimination claim, she has still not succeeded in raising any fact questions with respect to the second and third steps of the ADEA analysis, *see supra* note 8, which also apply in the Title VII analysis. *See Meinecke*, 66 F.3d at 83.

20

qualified, and because she has not been able to secure a permanent teaching position. Complaint, at 13.

The Court notes at the outset that only the first two of these allegations appears to relate to Plaintiff's First Amendment free speech and association rights. Therefore, with respect to Plaintiff's claim brought under the First Amendment, the Court need only analyze Plaintiff's allegations that Defendants "retaliated" against her because she "attempted to speak out on matters of public concern regarding the arbitrary and capricious manner in which H.I.S.D. implemented its policies and procedures" and because she had her union representative accompany her to grievance proceedings and other meetings.

**Speaking out on matters of public concern.**-- In a series of cases, the Supreme Court has held that a public employee's speech is entitled to judicial protection under the First Amendment only if the speech addresses a matter of "public concern." *See Waters v. Churchill*, 511 U.S. 661, 668 (1994); *Connick v. Myers*, 461 U.S. 138, 146 (1983); *Pickering v. Board of Education*, 391 U.S. 563 (1968). Whether a public employee's speech addresses a matter of public concern must be determined "by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48. *See also Wallace v. Texas Tech University*, 80 F.3d 1042, 1050 (5th Cir. 1996); *Price v. Brittain*, 874 F.2d 252, 257 (5th Cir. 1989); *Day v. South Park Indep. Sch. Dist.*, 768 F.2d 696, 700 (5th Cir. 1986).

The subject matter of an employee's speech does not "rise to a level of 'public concern' by virtue of the speaker's interest in the subject matter." *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794, 798 (5th Cir. 1989). Rather, speech attains a protected status

21

"if the words or conduct are conveyed by the [employee] in [her] *role as a citizen* and not in [her] *role as an employee*" of the government. *Id.* at 799 (emphasis in original). *See also Dorsett v. Board of Trustees for State Colleges & Universities*, 940 F.2d 121 (5th Cir. 1991). Thus, when a public employee speaks as a citizen, her speech is protected. However, when the employee speaks merely in her role as employee, her speech is predominantly a matter of personal concern and is unprotected absent unusual circumstances. *See Stewart v. Parish of Jefferson*, 951 F.2d 681, 683 (5th Cir. 1992); *Ayoub v. Texas A&M University*, 927 F.2d 834, 837 (5th Cir. 1991).

When the nature of the employee's speech is "purely private, such as a dispute over one employee's job performance, [the employee] enjoys no first amendment protection as to that speech." *Kirkland*, 890 F.2d at 799. As the Supreme Court noted in *Connick*, "[t]o presume that all matters which transpire within a government office are of public concern would mean that virtually every remark -- and certainly every criticism directed at a public official -- would plant the seed of a constitutional case." *Connick*, 461 U.S. at 149. The First Amendment, however, "does not require a public office to run as a roundtable for employee complaints over internal office affairs." *Id.* The Fifth Circuit has explained this principle as follows:

> Because almost anything that occurs within a public agency could be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee. Rather, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as citizen or primarily in [her] role as employee.

*Terrell v. University of Texas System Police*, 792 F.2d 1360, 1362 (5th Cir. 1986).

In her Complaint, Plaintiff makes the conclusory allegation that she suffered adverse employment action because she spoke out "on matters of public concern regarding the arbitrary and capricious manner in which H.I.S.D. implemented its policies and procedures." However, her Complaint does not reveal that Plaintiff spoke out on matters of public concern, as defined by the authorities cited above. Instead, her Complaint reveals solely that Plaintiff complained about her own personal treatment by Defendants. Her complaints against Defendants were clearly made in her "role as an employee," not in her "role as a citizen." Plaintiff's complaints were that Ervin gave her unfair reprimands and assigned her to inadequate classrooms and that H.I.S.D. did not find her a position as a stationary teacher.

The closest Plaintiff's allegations come to reaching a matter of public concern are her allegations regarding her classroom conditions. However, in light of the entire summary judgment record, the Court holds that Plaintiff has failed to create a genuine issue of material fact as to whether these complaints regarded a matter of public concern. From Plaintiff's Complaint, it is clear that she objected to the conditions of her classrooms because she felt that she personally was being mistreated by Defendants, not because she felt the need, as a citizen, to voice concern on the state of public school conditions.

**Association with union official.**-- With respect to Plaintiff's claim that Defendants retaliated against her because she had her union official accompany her to grievance proceedings and other meetings, Plaintiff has failed to offer any evidence whatsoever in support of this theory. Plaintiff cites case law for the proposition that the First Amendment prohibits retaliation against a public official on the basis of her political affiliations, *see*

*Brady v. Fort Bend County*, 58 F.3d 173 (5th Cir. 1995); *Kinsey v. Saldo Indep. Sch. Dist.*, 950 F.2d 988 (5th Cir. 1992) (en banc), but, other than her conclusory allegations and subjective impressions, she has submitted no evidence suggesting that any of Defendants' actions against her were connected to her relationship with the teachers' union. Plaintiff has therefore failed to raise a genuine issue of material fact as to whether she was mistreated due to her union affiliation.

Because Plaintiff has failed to raise a fact issue on either of her First Amendment theories, the Court dismisses Plaintiff's claim that Defendants violated her rights under the First Amendment.

### E.     Equal Protection Claim

Finally, Plaintiff claims that Defendants have violated her rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. In support of this claim, she alleges that "Defendants have placed several white male and/or female teachers in permanent teaching positions even though it is the H.I.S.D. policy to give supernumerary teachers such as Plaintiff first preference when permanent positions become available." Complaint, at 13-14.

In order to establish a violation of the Equal Protection Clause, a plaintiff must prove that a governmental classification unlawfully discriminates against a category of people. *See City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir.), *cert. denied*, 118 S.Ct. 559 (1997). As the Fifth Circuit has recently explained, "[a] violation of the equal protection clause occurs only when

. . . the governmental action in question classifies between two or more relevant persons or groups." *Vera v. Tue*, 73 F.3d 604, 609-10 (5th Cir. 1996). *See also Mahone v. Addicks Utility Dist. of Harris County*, 836 F.2d 921, 932 (5th Cir. 1988) ("[b]ecause the Clause's protection reaches only dissimilar treatment among similar people, if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action does not deny equal protection").

Plaintiff's equal protection claim must be dismissed because Plaintiff has failed to satisfy the threshold requirement of establishing that Defendants have created any classifications among groups of people. Indeed, Plaintiff's Complaint merely alleges that she alone was mistreated. As described earlier with respect to Plaintiff's race and age discrimination claims, Plaintiff has failed to provide any evidence whatsoever of any person who she claims received more favorable treatment than she received. Plaintiff relies solely on her conclusory allegations that H.I.S.D. placed younger teachers and white teachers in permanent positions, while she remained a supernumerary teacher, but she has submitted no evidence to support these allegations. Thus, Plaintiff has failed to raise a genuine question of material fact as to whether Defendants' actions even classify or distinguish between two or more relevant persons or groups. The Court therefore dismisses Plaintiff's equal protection claim.[13]

---

[13]     With respect to both of Plaintiffs' constitutional claims, Defendants also argue that Ervin, in his personal capacity, is protected from liability under the doctrine of qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for suits brought against them in their personal capacities unless their conduct
(continued...)

**F.    Defendants' Motion to Strike**

In their Motion to Strike, Defendants argue that Plaintiff's Affidavit, Exhibit A to Response, should be stricken because it is based on inadmissible hearsay, it is not based on personal knowledge, and it makes speculative and conclusory allegations. Defendants further argue that Plaintiff's other summary judgment evidence, Exhibits B-M to Response, should be stricken because these exhibits have not been properly authenticated.

The Court need not address Defendants' objections specifically because it has concluded that, even if Plaintiff's evidence is admissible, it is not sufficient to defeat Defendants' Motion for Summary Judgment. Defendants' Motion to Strike is therefore denied as moot.[14]

---

[13]    (...continued)
violates clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995). In examining an official's claim of qualified immunity, courts follow a two-step process. The first step is to ascertain whether the plaintiff alleges "the violation of a clearly established constitutional right." *Siegert v. Gilley*, 500 U.S. 226, 231 (1991). The second step is to decide whether the defendant's conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident. *See Nerren v. Livingston Police Dept.,* 86 F.3d 469, 473 (5th Cir. 1996); *Gunaca v. State of Tex.*, 65 F.3d 467, 473-74 (5th Cir. 1995). As described in the text, Plaintiff has not met her summary judgment burden of showing that either defendant violated her constitutional rights. Thus, Ervin is also free from liability for Plaintiff's constitutional claims under the doctrine of qualified immunity.

[14]    In any event, the Court finds that Defendants' objections regarding Plaintiff's affidavit go more to the weight that should be accorded that affidavit, rather than its admissibility. With respect to Defendants' claim that Plaintiff's affidavit contains hearsay, the Court has not considered the parts of the affidavit that would otherwise be hearsay as support for the truth of the matters asserted in that affidavit.

## IV.   CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 17] is

**GRANTED.** It is further

**ORDERED** that Defendant's Motion to Strike [Doc. # 20] is **DENIED AS MOOT.**

SIGNED at Houston, Texas, this _5th_ day of March, 1998.

NANCY F. ATLAS
UNITED STATES DISTRICT JUDGE